SENTELLE, Circuit Judge,
concurring.
I join without reservation, and indeed with enthusiasm, the full opinion of the majority. I write separately only to express my concern with language from United States v. West, 458 F.3d 1 (D.C.Cir.2006). As the majority notes, the West decision contains the statement, in rejecting a defendant’s assertion of violation of his Sixth Amendment right to an impartial jury, that “Finally, and critically, West does not allege that any juror who sat on his case was actually biased against him.” West, 458 F.3d at 8. I do not take that sentence to establish a requirement that in order to prove a violation of Sixth Amendment rights by an inadequate voir dire or other prejudicial error in jury selection, a defendant must identify an actually biased juror who sat on the case. Such a hurdle seems to me to be impractical and in most cases impossible. Absent some unlikely extra-judicial utterance by such a juror or some extrinsic evidence not extant in most cases, a defendant could not know, let alone establish the prejudice of a particular juror.
Indeed, after the entry of a verdict, unless the defendant makes a request before the jury is discharged, neither he nor counsel may contact jurors except upon a showing of “good cause.” D.C. Local Crim. Rule 24.2(b). Even if defense counsel timely makes such a request, however, “the Court shall inform the jury that no juror is required to speak to anyone but that a juror may do so if the juror wishes.” Id. And even if a juror chooses to speak to the defendant or his attorney, Federal Rule of Evidence 606(b) strictly limits what evidence may be admissible in challenging the verdict’s validity. See F.R.E. 606(b) (limiting post-verdict juror testimony to “(1) whether extraneous prejudicial information was improperly brought to the jury’s attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form.”). Although these rules play an important role in preventing juror harassment, see Tanner v. United States, 483 U.S. 107, 119-20, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (discussing juror harassment as one of the “[substantial policy considerations” justifying restrictions on post-verdict testimony), they make demonstrating actual bias nigh impossible. Requiring proof of actual bias in every case, moreover, would place the defendant in a Catch-22 situation. The Supreme Court justifies the strict limitations on post-verdict juror testimony on the grounds that voir dire ensures “[t]he suitability of an individual for the responsibility of jury service.” Id. at 127, 107 S.Ct. 2739. Those rules, in other words, assume proper voir dire. Yet if proof of actual bias were required in all circumstances, those same rules would prevent a defendant from successfully challenging a defective voir dire.
I do not believe that the extracted sentence from the West opinion was intended to establish that a juror must make such a showing of actually biased membership on the jury in order to prevail on a Sixth Amendment claim relating to jury selection. As the majority notes, the sentence follows a discussion of the compelling reasons why the compound questions in the West jury selection did not constitute prejudicial violations of the defendant’s Sixth Amendment rights. I therefore believe that the sentence only intended to emphasize that in addition to the failure of his generalized claim, the appellant had not raised any claim of specific juror bias. *1348 This interpretation of the sentence is supported by the fact that the West court relied on United States v. Haldeman, 559 F.2d 31, 70-71 (D.C.Cir.1976). The cited portion of Haldeman follows a thorough and laudatory discussion of the voir dire procedure followed in that case. That discussion concluded with the observation that:
Indeed, no one who reads this transcript can fail to be impressed with the patience, attention, and acumen with which the judge probed the opinions of the veniremen so as to remove those who harbored any prejudice or preconception.
Id. at 70. The section relied upon by the West court immediately follows and states:
Our conclusion that the voir dire was adequate does not end our review of the jury selection. As is our duty, we have reviewed the record to ascertain for ourselves whether appellants were tried by an unbiased jury capable of basing its verdict solely on the evidence introduced at trial. Appellants appear to concede this ultimate conclusion, for they never suggest that the jury was actually prejudiced against them or that its verdict rested on anything other than the overwhelming evidence of their guilt. On the basis of our own review, we have no doubt that the jury was impartial. Accordingly, we find no reversible error associated with the impaneling of the jury.
Id. at 70-71. Therefore, I think it plain that neither the West nor the Haldeman opinion was holding that a showing of actual bias by a juror or jurors is necessary to the establishment of a Sixth Amendment violation, but only that such a showing would be sufficient. In the absence of such a showing, the defendant must show some other evidence of bias in the jury selection or composition. The defendants in Haldeman and West could not meet that need to show other evidence. As well established in the majority opinion, the appellant before us has.